# MERIWETHER SUPERIOR COURT.

## FEBRUARY TERM, 1842.

---

JOHN DOE, EDWARD S. MEADOWS and PRISCILLA MEADOWS vs. RICHARD ROE, casual ejector, and WALTER BARRY, Tenant in possession.

*Ejectment, and Verdict for Plaintiffs and Rule Nisi for a new trial.*

1st. Parole evidence is admissible to raise a latent ambiguity in a grant, and then to explain it.

2nd. If there be a mistake in the christian name of a grantee, it may be explained by parole evidence.

This is an action of Ejectment brought for the recovery of lot of land No. 134, in the eighth district of originally Troup, now Meriwether county. Upon the trial, plaintiff introduced in evidence a grant from the State of Georgia to *James Meadows*, orphan, of *Harrol's* district, Upson county, for said lot of land, bearing date on the 22nd day of March, 1834, and which in its body, to wit : the *tenendum et habendum* conveyed the said lot of land to the said *James Meadows.* He then proposed to introduce parole testimony, to show that *Edward S. Meadows*, and not *James Meadows*, was the grantee intended. This motion was resisted by defendant's counsel, upon the ground that parole testimony could not be admitted for the purpose of varying or explaining a written instrument. The Court overruled the objection, and permitted the evidence to go to the Jury. This testimony proved that *Edward S. Meadows* was an orphan at the time of giving in for draws in the land lottery of 1825 and 1826, and that he at that time resided in *Harrol's* district, Upson county, and that there was no person by the name of *James Meadows* residing in that district or county, and that the only orphan who resided in said district by the name of *Meadows*, at the time of taking in the names of persons entitled to draws in said lottery, was *Edward S. Meadows*, upon whose demise the plaintiff relied. It was further

[John Doe, Meadows, &c. vs. Richard Roe & Barry.]

proved, that *Edward S. Meadows* was an orphan of *James Meadows*, who had departed this life many years before in the county of Putnam. It did not appear that any individual by the name of *James Meadows*, or any other orphan by the name of *Meadows*, or any other name, had at any time set up a claim to said lot of land. The plaintiff proved the *locus*, and that the rent of said premises was worth, in the opinion of one witness, thirty dollars per annum, and one hundred dollars per annum, in the opinion of another. The Jury found for the plaintiff, on the demise of *Edward S. Meadows*, the premises in dispute, and one hundred and ninety-four dollars for mesne profits. The counsel for defendant then moved for a new trial, upon the following grounds :

1st. Because the Court committed error, in permitting parole evidence to shew that *Edward S. Meadows*, one of the lessers of the plaintiff, was the grantee intended, when the grant introduced by him was to *James Meadows*, orphan.

2nd. Because the Court committed error, in deciding that parole evidence could be introduced by the plaintiff to explain a latent ambiguity, when there was no ambiguity on the face of the grant, nor any ambiguity raised by any other testimony.

3rd. Because the Court permitted the plaintiff to introduce parole evidence to contradict the face of the grant which he had introduced himself in evidence, by shewing that *Edward S. Meadows* was the person intended to be the grantee, instead of *James Meadows*, (orphan,) the person named in the grant.

4th. Because the verdict was contrary to both Law and evidence.

It will be perceived, by an examination of the *rule nisi*, that the three first grounds are substantially the same, to wit : That the Court *erred*, in permitting the plaintiff to introduce parole testimony to prove that *Edward S. Meadows*, one of the lessers of the plaintiff, was the grantee intended, instead of *James Meadows*, the person named in the grant, or they are so nearly so that I shall consider them all together.

It is a general rule of Law, well established and long acquiesced

k

in, that parole testimony cannot be admitted to vary or contradict a written instrument, yet we find in practice that *this*, like most other general rules, under peculiar circumstances, is subject to certain modifications. There is a marked distinction between varying or contradicting a written instrument, and giving it effect by shewing its application to the proper subject matter. The provisions of any instrument in writing may become nugatory without the assistance of parole testimony. In fact, it is difficult to conceive in what manner the provisions of a grant can be applied to its subject matter, without the aid of extrinsic evidence. However clear and unambiguous a grant may be on its face, yet without parole testimony to define its location, to prescribe its boundaries, or identify its grantee, it might be rendered unavailing. Upon the same principle it has been held, that where a mistake occurs in a grant in describing a grantee, or the thing granted, parole testimony is admissible to give effect to the grant by explaining the mistake ; if it were otherwise, it will be perceived that the rule would be productive of the most mischievous consequences. I apprehend that, upon a thorough examination of all the authorities, the settled rule will be found to be *this*—that where the instrument contains a *patent* ambiguity, that is, one which is apparent upon the face of the instrument itself, it cannot be explained by parole testimony, but where the ambiguity is *latent* and not apparent upon its face, parole testimony is admissible, to explain it, and give it effect. " An ambiguity apparent on reading an instrument, is termed ambiguitas patens, that which arises merely upon its application, ambiguitas *latens :* the general rule of Law is, that the latter species of ambiguity may be removed by means of parole evidence."—*Starkie's* Ev. 3 vol. 999. *Sugden* on Vend. 152. *Peake,* 179, 180. But I consider the rule of Law on this subject, too well settled to require discussion—the only question is, whether the case under consideration falls within the rule. Let us then examine the facts of the case, and the authorities bearing upon them. This is a grant conveying a lot of land to *James Meadows*, orphan, of *Harrol's* district, Upson county. The evidence introduced by the plaintiff, shews, that at the time of giving in for draws in said lottery, there was an orphan by the name of *Meadows*, in *Harrol's* district, Upson county, but whose name was *Edward S.* instead of *James*, and that there was no orphan by the name of *James Meadows* in said district ; there was then no person answering the description contained in the

[John Doe, Meadows, &c. vs. Richard Roe & Barry.]

grant, and it is not to be presumed that the grant was made without an object, and without intending to confer the title upon some one. Then as the title of the land was intended to pass and did pass out of the State, and as there was no such person as the ostensible grantee, there must be a mistake in the grant, and an ambiguity arising in attempting to point its application to the proper grantee. Is not this such an ambiguity as can be explained by parole? Here is no ambiguity on the face of the grant, but every thing there, is right and clear; but this parole testimony, dehors the grant, establishing the fact that there was an orphan in said district, by the name of *Meadows*, whose name was *Edward S.*, and that there was no orphan there by the name of *James Meadows*, raises the ambiguity. The ambiguity, if one exists at all, is a latent ambiguity, for it does not exhibit itself on the face of the grant, and as such, according to the authorities, is susceptible of explanation by parole proof. Now, if there were no person answering any part of the description contained in the grant, the parole evidence would raise no ambiguity, and there being no person who could take under the grant, it would be void for uncertainty. But when it can be shewn by the admission of parole testimony that there is a person who answers the description given of the grantee in the grant, in every particular except the christian name, and that there is no person answering the description fully, will not the conclusion irresistibly force itself upon the mind, that there is a mistake? and if it can be explained by parole testimony in accordance with the rules of Law, as above stated, should not the Court admit the testimony and thereby give effect to the grant, rather than to destroy its effect altogether, and render it void by rejecting the testimony? Let us now examine some of the decisions which have been made in the English Courts upon the subject of the admission of parole testimony, to explain latent ambiguities in written instruments. One of the first cases in point of time was *Lend Cheney's* case, (5th *Coke* 68,) where the testator had two sons by the name of *John*, parole testimony was admitted to shew that *John* the younger was intended by the testator, (see 3rd *Starkie* 1022.) In another case, where the testatrix devised her estate to her cousin *John Cluer*, there being both father and son of that name, parole evidence was admitted to shew that the son was meant.—*Jones vs. Newsam*, 1st *Bl.* R. 60. (3rd *Starkie* 1022.) A man having two manors called *Dale*, levied a fine of the manor of *Dale*, circumstances may be proved to shew

which manor was meant. (1st *T. R.* 701.) A grant made to *William*, Bishop of Norwich, the name of the Bishop of Norwich being *Richard*, was held to be good, (3rd *Starkie* 1023 ;) so a devise made to *John*, the son of *J. S.*, and *J. S.* has but one son whose name is *James*, was held to be good.

*Idem.* It is laid down as a general rule by Mr. STARKIE, 3d vol. 1024, " that when difficulties arising in the application of the terms of a will, from imperfection in the terms of description, either of the party to whom the estate is given, or of the estate, may be removed by the aid of extrinsic evidence, even although no part of the description be perfectly correct, and cites the case of *Beaumont* vs. *Fell*, 2nd *Peer Wms.* 141, when a will was made in favour of *Catharine Eardley*, and evidence was allowed to shew that *Gertrude Yardley* was the person meant. Also the case of *Dowset vs. Sweet*, (*Ambler's* 175,) when the testator gave a legacy to *John* and *Benedict*, sons of *John Sweet*, and *John Sweet*, the father, had two sons only, (viz.) *James* and *Benedict*, parole evidence was admitted to prove that the testator used to address *James Sweet* by the name of *Jackey*. Many other authors might be referred to, all going to establish the same principle.

But it may be objected that most of the decisions in the above cases were made in relation to *wills*, and that the Courts have always been more liberal in the construction of wills for the purpose of carrying into effect the intentions of the testator, than they have been in relation to grants. It is true, that in most of the cases referred to, the question arose under wills, but this does not prove that the doctrine is not applicable in cases of deeds, but is owing perhaps to the fact, that in England, lands are more frequently conveyed by devise or will than in any other way, and although different rules of construction may be applicable to the various kinds of instruments, yet I can see no good reason for a distinction in this particular. The question is, whether parole testimony can be admitted to raise and explain a latent ambiguity in a written instrument, or to shew that there is a mistake in the christian name of the grantee, and I can see no good reason why it should not be done in the one case as well as the other. But this question has not only been frequently litigated and adjudicated in the English Courts, but it has been adjudicated in the Courts of this country in cases of patents and grants to

[John Doe, Meadows, &c. vs. Richard Roe & Barry.]

land, and Judge COWEN, in his annotations on PHILLIPS on Evidence, when speaking upon this subject, says " that the doctrine in the text has been frequently recognized and acted upon. It is no less applicable to *deeds* and other written instruments than to wills." (4th *Phillips* 1362.) In the case of *Jackson* vs. *Stanley*, (10th *Johns*. R. 133,) I think the doctrine contended for on the part of the plaintiff is fully sustained. There the lessers of the plaintiff were the heirs of *Daniel Hungerford*, and the patent to the land had issued in the name of *David Hungerford*. The plaintiff relied upon two grounds for a recovery : First, an Act of the Legislature, passed since the grant issued, vesting the title in *Daniel Hungerford*. Secondly, upon the ground that there was a mistake in the christian name of the patentee, which should have been *Daniel* instead of *David*. To sustain the first ground, the act of the Legislature was given in evidence. To sustain the second, the Court permitted the plaintiff to raise a latent ambiguity by showing that no individual by the name of *David Hungerford* was entitled as a soldier to a patent for the land in dispute, and after having raised the ambiguity by parole testimony, the Court permitted him by the same kind of testimony to prove that *Daniel Hungerford* was the soldier entitled, and consequently the patentee intended. And it will be recollected, that in that case, the defendant claimed under a real person, *David Hungerford*, which was carrying the doctrine a great deal farther than it was carried in the case before the Court, for in this case, there is no person claiming the land by the name of *James Meadows*. But it is contended by the defendant's counsel, that the ground upon which the decision in the case of *Jackson* vs. *Stanley*, was predicated, was the act of the Legislature passed for the relief of *Daniel Hungerford*, vesting the title in him ; but there is nothing more clear, than that if the title had once vested in *David Hungerford*, by virtue of the letters patent, that the Legislature had not the right or power to divest it, and so it was expressly stated by the Court. Chief Justice KENT, in delivering the opinion of the Court, decides, that it was competent for the plaintiff to raise a latent ambiguity by proving a mistake in the name of the grantee, and to explain that mistake by parole testimony. He then remarks, " the grant then is either void by reason of the misnomer, or the parole proof supplies and corrects the mistake in the christian name of the soldier intended, and in either case, the lessers of the plaintiff are entitled to recover. We do not

go upon the ground that the act of the Legislature could divest a right legally acquired under the patent. It could not. But the patent gave no title to the person under whom the defendant holds, because he was not the patentee." He does not decide that the patent is void on account of the misnomer, but says that such was the old rule, and even under that rule, he says, upon the authority of Lord COKE, " that a grant may sometimes be good though the grantee's name of baptism be mistaken." He further says, that " if the patent had designated the *Hungerford* intended, by specifying the regiment and company to which he belonged at the time of his death, it might have been good, as being equally susceptible of being reduced to certainty. But the patent adds no description or demonstration to the name of the patentee. It is simply a patent of the lot to *David Hungerford*, and according to the rule which has been mentioned (to-wit, the old rule,) the heir of *Daniel Hungerford* cannot take under that patent, because their ancestor is not the patentee named." " In all the cases which I have seen, where there was a misnomer, there was some description connected with the name, and there was no other person who set up a title in competition under the erroneous name." Now, what is the doctrine clearly deducible from this language?—*First*, that if there be a misnomer in the christian name, and the patent adds any words of description to the name of the patentee, and there being no other person answering to the name of the patentee, setting up a title in competition, the grant is not void, but may be rendered valid and effective by shewing who the patentee is, and that parole testimony may be admitted to prove the mistake, and explain the ambiguity. Then, is not the case under consideration just such a case? Here is a grant conveying a lot of land to *James Meadows*, orphan, of *Harrol's* district, Upson county—here are words of description and demonstration added to the name, and the parole testimony shews that the lesser of the plaintiff answers to the description of the person, given by the grant in every particular except in the christian name. It further shews, that there is no person by the name of *James Meadows*, setting up a title in competition. Is it not clear then, according to the rule here laid down by Chief Justice KENT, that the grant in this case is not void, but there being a mistake in it, of the christian name only, it is such a mistake as can be explained by parole testimony? But it is contended by defendant's counsel, that the case of *Jackson* vs. *Stanley*, has been

[John Doe, Meadows, &c. vs. Richard Roe & Barry.]

overruled by the subsequent case of *Jackson* vs. *Hart*, (12th *Johns.* R. 77.) I must admit that it is very difficult to reconcile the doctrines laid down in these cases, but still there is a difference; in the one case, the mistake was in the christian name, in the other, it was in the surname. But the case of *Jackson* vs. *Hart*, differs from the Case before the Court not only in that particular, but in another very essential and material point, to-wit, in that case there were two distinct names, and two real persons corresponding with them; in this, there is no real person answering to the name of *James Meadows*. And in the case of *Jackson* vs. *Goes*, (13th *Johns.* R. 519,) Judge Spencer, in delivering his opinion, when speaking of the decision in the case of *Jackson* vs. *Hart*, says, "though I took no part in that decision, having been unavoidably absent when it was argued, I understand from the opinion expressed, that it was not intended to *shake*, much less to overrule, the prior decision in *Jackson* vs. *Stanley*. And Chief Justice Thompson, in the same case, says, "that the identity of the patentee is a matter that may be enquired into in this collateral way, is settled by the case of *Jackson* vs. *Stanley*, and which case I understand it was not intended to overrule by the decision in *Jackson* vs. *Hart*, an enquiry as to the identity of the patentee, does not in any manner contradict or make void the patent, nor does it imply that there is not a person in *esse* capable of taking under the grant."

But it has been contended on the part of the defendant, that although it may be competent to admit parole testimony to explain a latent ambiguity, when such ambiguity is raised or created, by the introduction of evidence by the adverse party, yet the party introducing a grant which appears plain and clear on its face, cannot raise the ambiguity himself by the introduction of parole testimony. It will be remarked, however, that in the case of *Jackson* vs. *Stanley*, the ambiguity was first raised by the introduction of testimony on the part of the plaintiff, and in fact, from the very nature of the circumstances, it is obvious, that in most of the cases referred to, this must have been the case. And it is expressly stated by *Starkie*, 3 vol. 1022, that parole evidence is inadmissible for the purpose of raising a latent ambiguity. It has been contended, also, that if there be a mistake in this grant, that the plaintiff should have applied to the Executive Department, for the purpose of having it corrected in

[John Doe, Meadows, &c. vs. Richard Roe & Barry.]

the manner prescribed in the act of 1827, on that subject. I am of opinion, however, that this act is only cumulative, and if a party fails to proceed according to its provisions, he is not thereby deprived of any rights which he may have had at the Common Law. If *Edward S. Meadows* was the grantee, which fact is established by the finding of the Jury, then certainly it will not be contended, that the act of 1827, which was passed for the relief of certain persons who had drawn land in said lottery, and in whose names mistakes had been committed from bad spelling, &c. could divest him of any right which had vested in him by virtue of the land lottery acts previously passed. If the effect of this act of 1827, be to divest a party rightfully entitled, of his vested rights, then it would certainly be affording him relief with a vengeance. Then, I must consider the act of 1827, as cumulative only, and if a party chooses to rely upon the judicial tribunals for the purpose of establishing his right to his property, without applying to the Executive, for the purpose of having a mistake corrected, he certainly has the right to do so. It has also been contended in the argument, that if the party be permitted to introduce this parole testimony for the purpose of making out his case, that his title will rest partly in writing and partly in parole, and that it therefore falls within the operation of the *Statute of Frauds*. The same doctrine might be contended for, in every case where parole evidence is introduced to prove the identity of the grantee or the locality of the premises, for it must be borne in mind, that the object and effect of the parole testimony in this case, is nothing more than to fix the identity of the grantee or drawer of the lot of land, and the grant being in writing, which is not contradicted, but only explained by the parole testimony, does not fall within the letter or intention of the Statute of Frauds.

Owing to the fact, that we have no Reports of the decisions of our Courts in Georgia, it is impossible to know how often this question may have been agitated and decided in this State. I have, however, met with two decisions, in cases which I think bear a strong analogy to the case under consideration, in both of which it was decided that, parole evidence was admissible to explain a grant and shew its application. The first is the case of *Doe, ex dem., Peyton Pinkard* vs. *Roe* and *James Bell* and *Samuel Marshall*, decided by my predecessor in Coweta Superior Court, the report of which I have found

[John Doe, Meadows, &c. vs. Richard Roe & Barry.]

in a newspaper. In this case, the plaintiff introduced in evidence a grant from the State to *Elizabeth Frazier's* children, for the lot of land in dispute, and was then permitted to shew, by parole testimony, that *Grace A. F. Frazier*, an illegitimate child of *Elizabeth Frazier*, was the grantee intended, notwithstanding it appeared that *Elizabeth Frazier* had another child by the name of *Sally*, under whom the defendants claimed. The other case is one decided at the last term of Marion Superior Court, by Judge WELLBORN, with a note of which I have been furnished. That was an action of ejectment, brought by *John Doe, ex dem., James R. Haines* vs. *Alexander Goodson*, in which the plaintiff offered in evidence a grant to *Robert Haines*, orph. The name of the grantee was written the same way whenever it occurred throughout the face of the grant—on the plat it was written thus: *Robert Haine,s* orph.; in the certificate of registry, on the back of the grant made by the Secretary of State, it was written thus: *Robert Haines'* orph. And the Court admitted parole evidence to shew who was intended as grantee, or in other words, he permitted the party interested in the fact, to shew that the orphan or orphans of *Robert Haines*, and not *Robert Haines*, an orphan, was intended as grantee. It will be perceived, that the question decided in this last case, and the case before the Court, is substantially the same. In the case in Marion, the grant was to *Robert Haines* orph., and the party was permitted to show, by parole testimony, that *James R. Haines*, an orphan of *Robert Haines*, was the grantee intended; and in this case the grant was to *James Meadows*, orphan, and the party was permitted to prove by parole that *Edward S. Meadows*, an orphan of *James Meadows*, was the grantee intended. And whether the error occurred by making a mistake in the christian name of the orphan, or by omitting the apostrophic *s*, or apostrophe after the name of *Meadows*, cannot alter the principle, the question being whether parole testimony can be admitted to explain a latent ambiguity arising upon the application of the grant, by shewing who is the grantee intended. Upon considering the three first grounds taken in the rule, I am of opinion, that it was competent for the plaintiff to show, by parole testimony, that there was a mistake in the christian name of the grantee, and that this being done, there was such a latent ambiguity as could be explained by parole, and that the effect of said testimony was not to contradict, but to give effect to the grant, by pointing it to its legitimate object.

[John Doe, Meadows, &c. vs. Richard Roe & Barry.]

The only remaining ground is, that the verdict is contrary to Law and evidence. If the conclusion which the Court has come to upon the other grounds be correct, the verdict was not contrary to Law, and it being the province of the Jury to find the facts upon the evidence submitted, and the evidence being, in the opinion of the Court, sufficient to authorize the finding, I cannot conceive upon what principle this ground can be sustained. The motion for a new trial is therefore refused.

WILLIAM EZZARD, J. S. C. C. C.

H. & O. WARNER, W. F. SAMFORD & G. F. HILL, for the motion.
W. D. ALEXANDER, contra.